Henning et al. v. The United States Ins. Co.

———•———

Robert M. Henning *et al.*, Appellants, *v.* The United States Insurance Company, Respondent.

1. *Practice, civil — Pleadings — Parol and written contracts, when sued on, must be distinctly stated.*—Parties may, by a subsequent parol agreement, upon a sufficient consideration, change or modify the terms of their written contract. But in suits on contracts of this nature the contracts must be distinctly set forth. Thus, where in a suit to recover insurance money for goods lost by fire, the petition set forth an absolute independent agreement, disconnected with any other previous transaction, it would not be competent for the plaintiff, in that state of pleadings, at the trial, to graft a verbal on a prior written contract.

2. *Corporations — Insurance companies — Parol contracts can not be made when charter or by-laws call for written agreements.*— Corporations, when

they are not restrained in any particular manner by their charters, may adopt all reasonable modes in the execution of their business which a natural person may adopt in the exercise of similar powers. And there are adjudicated cases showing that at common law, where no particular mode of insurance is pointed out in the charter, insurance companies may make verbal contracts of insurance which are binding and valid. But where a company's charter declares that "all conditions of policies issued by said company shall be printed or written on the face thereof," and its by-laws require that the president "shall sign all policies or other contracts by which the company shall be bound," and "that every proposal for insurance shall be by written application, signed by the applicant or his agent," such company can make no original or binding contract by parol.

*Appeal from St. Louis Circuit Court.*

*T. T. Gantt,* for appellants.

A parol contract of insurance, such as (we say) was made with defendant in March, 1864, acted upon and carried into effect as it was, is binding and enforceable at law. That such a contract may be made, and that it binds the corporation, though without writing, has been repeatedly decided by courts of the highest authority, viz: Kennebec Co. v. Augusta Insurance & Banking Co., 6 Gray, Mass., 204; First Baptist Church v. Brooklyn Fire Ins. Co., 18 Barb. 75; 19 N. Y. 305; Halleck v. Ins. Co., 2 Dutch., N. J., 268–76; Mobile Marine Dock & Mutual Ins. Co. v. McMillan & Son, 31 Ala. 711; Commercial Mutual Marine Ins. Co. v. Union Mutual Ins. Co., 19 How. 318, 321.

The rule laid down by Judge Curtis in 19 Howard, which has been adopted in Massachusetts, New York, New Jersey and Alabama, is entirely compatible with the statute law of Missouri.

Under the act of 1845 (R. C. 1845, p. 232, § 8), the capacity of a corporation to make a parol contract, and the liability of a corporation to be bound by an implied contract, differs in no respect from that of an individual or natural person. This section is part of the charter of the defendant. All corporations created after the passage of that act are subject to the disabilities and restrictions of the general law on the subject. But as to this provision in section 8, it is believed that it became operative immediately on its passage, with respect to all existing corporations. When, in 1855, the charter of the defendant was given,

the seventh and fifteenth sections of the act of 1845 were declared to be not a part of its charter. This is quite equivalent to saying that the other sections of that act were applicable to the new company.

So far as the case of Plahto v. Merch.. & Manuf. Ins. Co. (38 Mo. 248) is concerned, it is submitted that all which is said in that instance respecting the non-validity of verbal contracts for insurance is *obiter dictum;* the question was not presented to the court then, whether such a contract was binding. No reference appears to the authorities now cited, and indeed the decision is rather one that asserts the general rule that is common to natural and artificial persons alike than one which exempts a body politic from liability. The more recent case of Mound City Mutual Ins. Co. v. Curran, 42 Mo. 374, agrees with Plahto v. Merch. & Manuf. Ins. Co., *supra,* and it was no doubt upon the authority of these cases that the Circuit Court decided the case at bar. But the precise point which this case presents has now been argued for the first time before this court. If there is a contradiction between the law declared by the courts of Massachusetts, New York, New Jersey, Alabama and the United States, and that which has been laid down *obiter* by this court on a matter of commercial law which ought to be uniform throughout the land unless controlled by positive statute, we are well warranted in asking this court to pause before making a different rule inflexible. According to the decision of this case the rule will henceforth be fixed in Missouri.

*Geo. P. Strong*, for appellants.

It was competent for the parties, by their course of dealing, to show the sense in which they used the terms employed in their contract, and to give the contract a construction different from the natural and ordinary signification of the words used in it. It was also competent for them to vary the terms of the contract by parol. (Chapman v. Black, 5 Scott, 530, 533 ; Bunce v. Beck, 43 Mo. 266 ; Eyre v. Marine Ins. Co., 5 Watts & Serg. 122 ; Mead v. De Golyer, 16 Wend. 632 ; Chit. Cont. 89 ; Protective Ins. Co. v. Wilson, 6 Ohio St. 533, 560; 25 Barb. 189; 23

How. 420; Kennebec Co. v. Augusta Insurance & Banking Co., 6 Gray, 204, 214; Mobile Marine Dock & Mutual Ins. Co. v. McMillan & Son, 31 Ala. 711; Warren v. Ocean Ins. Co., 16 Me. 439.) It was competent for the parties to make a valid contract of insurance by parol, and such contract ought to be enforced. (First Baptist Church v. Brooklyn Ins. Co., 18 Barb. 69; same case, 31 N. Y. 305; Kennebec Co. v. Augusta Insurance & Banking Co., *supra;* Mobile Marine Ins. Co. v. McMillan & Son, *supra;* Com. M. M. Ins. Co. v. Union M. Ins. Co., 19 How. 318; 11 Paige Ch. 555; 4 Sandf. Ch. 408; Palm, Adm'r, v. The Medina Ins. Co., 20 Ohio, 529; E. Carver Co. v. Manuf. Ins. Co., 6 Gray, 214.)

The case in Ohio (16 Ohio, 148), and that of The Mound City Co. v. Curran, 42 Mo. 374, are not in point. In them the policy had become absolutely dead, and the decisions merely hold that in the absence of all proof of authority it was not competent for the secretary, either orally or by writing, to issue what in effect was a new policy. In the case at bar there was a valid subsisting policy, all the time so treated and so regarded by both parties, and one that the courts would enforce. In this case it was mutually agreed that defendant's policy should cover just such risks as those now insured for, and both parties acted upon this construction for years and until this loss. The plaintiffs entered upon the policy books all their shipments, irrespective of the points of shipment or of destination, and the defendant accepted the risks and received the premiums. No such proof appeared in the Ohio case, nor in the Mound City case, *supra*, nor did any such facts appear in the Plahto case, 38 Mo. 248. In the latter case both parties had expressly stipulated that the policy should only cover certain risks "in such sums, on property, from and to such places and on board such vessels, as shall be specified by application and mutually agreed upon and written on this policy." When this policy was signed, some matters were left open, but, by its express terms, before it could take effect everything must be closed; there must be an application, a mutual agreement, and a writing of the risk upon the policy. Nothing of this kind was required of Henning & Wood-

ruff. They were authorized and required to enter all their ship-ments. Neither party could refuse to be bound. Justice Holmes recognized the distinction in the Plahto case, 38 Mo. 255. Bodley was the secretary and general agent of defendant and had authority to make such a contract. He had been making just such contracts for nine years, and the defendant had received the benefits growing out of them. These benefits, during the last eighteen months prior to the loss in this case, had amounted to $50,000. All this the company received, without a word of dis-sent, upon contracts of insurance almost identical with that upon which this suit was founded. Such dealings, assented to by the corporation, were proof sufficient of authority in the agent; and from such a course of dealing the law will imply the authority of the agent, and also the existence of the contract itself. (Bank of the United States v. Dandridge, 12 Wheat. 68, 70 ; Gen. Stat. 1865, p. 327, § 6 ; Mechanics' Bank v. Bank of Columbia, 5 Wheat. 326 ; Bank of Vergennes v. Warren, 7 Hill, 91; 94 ; Bank of Columbia v. Patterson, 7 Cranch, 305 ; 27 Conn. 538, 554 ; 6 Barb. 576.)

The provisions of the charter in the case at bar ought not to be so.construed as to exclude the power to make such contracts as that sued on. They were designed merely to enlarge the powers of the corporation, and to point out the agents by whom such formal contracts as might be made by the formal acts or resolution of the board of directors might be completed. They were not designed to repeal or annul the provisions of the General Statutes of the State which hold corporations bound on implied contracts as well as their more formal contracts. (19 How. 318.)

*Glover & Shepley*, and *Sharp & Broadhead*, for respondent.

I. There can be no such thing as an oral insurance in any case. There will be cases cited to support such a view, but upon examination they will be found to be either (*a*) cases of a written contract and parol waiver of conditions, such as the case of Horwitz v. Equitable Ins. Co., 40 Mo. 557 ; (*b*) or cases enforc-ing a parol agreement to make a written contract; in this class

comes 19 How. 318, which was a bill in equity to enforce a parol agreement to insure (2 Dutch. 268); (c) or cases of a parol contract to renew a written policy for a further period. In this class comes the First Baptist Church v. Brooklyn Ins. Co., 19 N. Y. 305, which was a case where there had been a policy taken out for a year, and by agreement it was to continue on at the same premium till either party notified the other, and on the faith of it a number of premiums had been paid. Both sound reason and authority are on the side that an oral insurance is a thing unknown to the law. (1 Duer on Ins. 60, § 5 ; 16 Ohio, 148 ; 6 Duer, 6 ; 9 Lower Canada, 488 ; 2 Cranch, 168 ; Plahto v. Merch. & Manuf. Ins. Co., 38 Mo. 252 ; Mound City Ins. Co. v. Curran, 42 Mo. 374.)

II. But if it be admitted that in some cases oral insurance is valid, yet in the case of this company the charter and by-laws of the company prohibit any oral insurance.

WAGNER, Judge, delivered the opinion of the court.

An exceedingly wide range was taken by the counsel in the argument of this case, but upon an examination of the pleadings as embodied in the record, the decision must be confined within much narrower limits. The amended petition on which the case was tried alleges that the plaintiffs were partners, and that on the 25th of March, 1864, they made with defendant a contract and agreement by which the defendant agreed that any shipment of cotton made by Butler & Co., of which firm plaintiffs were members, on any steamboat from any point on the Mississippi river and its tributaries to any point on said river, and consigned to either Butler & Co. or the plaintiffs, might be at the time of shipment entered on the bill of lading as insured by the defendant.

The petition then avers that on the 9th day of June, 1864, the cotton on which the loss is claimed was shipped on the steamer Progress, consigned to Butler & Co. at Cairo ; that immediately upon the signing of the bills of lading for the cotton on board the steamer, a memorandum was entered on said bills, which stated that the same was insured in Henning & Woodruff's open policy of insurance with the United States Insurance Company.

There is, then, an averment of loss by fire, one of the perils insured against, an offer to pay the premium, and a demand for the insurance money and a refusal to pay.

The answer of the defendant denies that any contract was made as stated in the petition, and substantially negatives every material allegation stated therein.

The plaintiffs, to maintain the issue on their side, offered in evidence an open policy issued by the defendant to them in the year 1855, which policy was in many essential particulars different from the contract on which they sought to recover. But, to avoid the variance and bring the contract within the operation of the policy, it was sought to introduce parol proof to show that the written policy was altered and modified by the consent and agreement of the parties, and that both parties subsequently acted upon the verbal modification.

This evidence was all excluded by the court, and the plaintiffs took a nonsuit, and after unsuccessfully seeking to set the same aside, they appealed to this court. There is no doubt in my mind that the intention of the parties, as declared by the words of the instrument, must govern, and subsequent acts and declarations may be looked to in aid of the construction. Parties may by a subsequent parol agreement, upon a sufficient consideration, change or modify the terms of their written contract. This proposition is well supported by authority. (Bunce v. Beck, 43 Mo. 266 ; Cummings v. Arnold, 3 Metc. 486, where the cases are collated and referred to.)

But in the present case the written contract is not declared on, nor is the suit instituted upon it in any modified form. The petition sets forth an absolute, independent agreement disconnected with any other previous transaction, and such being the case, it was not competent for the plaintiffs at the trial to blend the two and graft the verbal on the prior written contract. We therefore see no error in the action of the court in excluding the evidence. The only remaining question, then, to be considered in the case is whether the verbal contract of insurance alleged to have been made in March, 1864, can be held valid. There is much disagreement in the books as to the power of corporations

to make contracts of insurance by parol. At common law there is nothing absolutely requiring that the contract should be in writing, though a written instrument is undoubtedly usual and customary.

In a recent case in this court (Plahto v. Merch. & Manuf. Ins. Co. of St. Louis, 38 Mo. 254) the learned judge who then occupied a seat on this bench said: "It would seem to be a settled principle that a policy of insurance must be in writing," and to sustain him in this proposition he cites 1 Arn. Ins. 50, note 1; 1 Duer on Ins. 60; 1 Phillips on Ins. 8; 3 Kent's Com., 7th ed., 921, note *e*. And Judge Read, speaking for the court in Ohio, declared that it was the universal commercial usage, confirmed by the general tenor of the authorities, that the contract should be in writing, and that it had been decided that such a thing as a verbal policy of insurance was unknown to the law. (Cockerel v. Cincinnati Ins. Co., 16 Ohio, 148; see also Mound City Ins. Co. v. Curran, 42 Mo. 374.) But the principle in the foregoing cases is, I think, too broadly stated. Corporations, where they are not restrained in any particular manner by their charter, may adopt all reasonable modes in the execution of their business which a natural person may adopt in the exercise of similar powers. The business of insurance is not strictly a corporate franchise; any person may engage in it unless forbidden by law; and where a private person engages in it, his parol contracts will bind him in the same manner as in any other business. The counsel for the appellants have cited a number of cases to show that verbal contracts of insurance are valid and will be upheld. Upon inspection it will be seen that they are adjudications arising at common law, where no particular mode was pointed out in the organic act chartering the company, or that they depend on special circumstances.

In the case of Mobile Marine Dock & Mutual Ins. Co. v. McMillan, 31 Ala. 711, it was said that, conceding that many commercial codes expressly require the contract of insurance to be in writing, it was certain that the common law made no such requisition, and it was held that there was no statutory provision in force in Alabama which required an agreement entered into in

that State to insure against loss by fire to be reduced to writing; therefore, in the absence of any such statutory provision, the question whether such an agreement was valid should be determined by the common law, and that law did not require it to be in writing.

Kennebec Co. v. Augusta Insurance & Banking Co:, 6 Gray, 204, was an action against a foreign insurance company, and two questions were raised by the record: first, whether the agents had authority to bind the corporation; second, whether the facts proved made a valid insurance.

It was an open policy of insurance "on property on board vessel or vessels to, at and from all ports and places, as per indorsements to be made hereon," provided that it should not be binding until countersigned by the agents of the company at Boston, and it was so countersigned. The agents afterward agreed orally with the assured to insure under this policy, for an additional premium, a certain number of bales of cotton on shore at New Orleans. The court decided that, in the absence of evidence of any limitation of the agents' authority, they were competent to bind the company; and having entered the risk upon the books of the company as taken, it was equivalent to a policy.

The Commercial Mutual Marine Ins. Co. v. Union Mutual Ins. Co., 19 How. 318, was a suit in equity to compel the specific performance of a contract to make re-insurance of a ship. The application for re-insurance and the assent by the officers of the company were clearly proved; and the court held that the agreement to issue the policy was binding, and specific performance was decreed.

In The Trustees, etc., v. Brooklyn Fire Ins. Co., 19 N. Y. 305, there was a fire policy issued for one year, and there was a subsequent agreement between the parties that until notice by either party to the other, the policy should be renewed from year to year. This it was held was not within the statute of frauds, and might properly be made by parol.

In the conclusion to which we have arrived, it is not necessary to impugn the doctrine of the above cases in the least. Did the record present a case so as to make them applicable, we should

28—VOL. XLVII.

be strongly inclined to follow them, but we find here nothing but a naked verbal agreement, alleged to have been made in March, 1864, sued upon. This is denied, and there is no proof of it; but were there evidence to sustain it, it could not be upheld. It is the universal and well-recognized rule that a corporate body can act only in the manner prescribed by the act of incorporation which gives it existence. It is the mere creature of law, and derives all its powers from the act of incorporation.

In the third section of the act incorporating the defendant we find it declares that "all the conditions of policies issued by said company shall be printed or written on the face thereof." Authority is then given to make by-laws, and one of the by-laws requires that the president "shall sign all policies or other contracts by which the company are bound." Again, another rule provides that "every proposal for insurance shall be by written application, signed by the applicant or his agents." These provisions are satisfactory and conclusive to my mind that there could be no original and binding contract by parol.

The result is that the judgment of the Circuit Court, with the concurrence of the other judges, must be affirmed.

On motion for rehearing, WAGNER, Judge, delivered the following opinion:

The counsel for the appellants have moved this court to grant them a rehearing in this cause; but, upon a re-examination of the subject and a review of the opinion, we have seen no reason for departing from our former views. The charter and by-laws of the company, in our opinion, required absolutely that the policy should be in writing, and this suit was instituted upon a simple verbal agreement — not on the original policy — nor was any modification of it alleged. The case of The Commercial Mutual Marine Ins. Co. v. Union Mutual Ins. Co., 19 How. 318, so strongly urged and confidently relied upon, has no controlling application to this case. That was a suit in equity to compel the specific performance of a contract to make re-insurance on a ship. It was objected that by force of a statute in Massachusetts insurance corporations could make valid policies of insurance only

Northrup et al. v. The Mississippi Valley Ins. Co.

by having them signed by the president and countersigned by. the secretary.   But the court said that they were of the opinion that that statute only directed the formal mode of signing policies, and had no application to agreements to make insurance.   That case and the one we are now considering are totally dissimilar. The statute allowing amendments to be made in furtherance of justice, so as to make the pleadings conform to the proof, upon the most favorable construction can not be tortured so as to include the amended petition which was sought to be filed in this case.   In every view in which we can regard the matter, the motion must be overruled.