EMIL C. GOLLER, Respondent, v. HENSELER MERCANTILE OIL AND SUPPLY COMPANY, Appellant

St. Louis Court of Appeals, December 2, 1913.

1. **CONTRACTS: Parol Evidence: Varying Written Contract.** All prior conversations and negotiations with respect to the subject-matter of a contract in writing are, in the absence of fraud, accident or mistake, merged in the contract.

2. **MASTER AND SERVANT: Breach of Contract of Employment: Rebating.** A contract of employment, which required the employee to get the market price for oil sold for the employer, and which obligated the employer to pay the employee a stipulated amount for oil sold by him, was breached by sales made by the employee at the market price but under an agree-

ment with his customers that he would refund them five per cent of his commission, justifying his discharge.

3. CONTRACTS: Modification: Action for Breach. A contract may be modified after it is executed, by varying its terms, or by adding new terms; but, in such a case, a recovery for a breach is to be had upon the original contract and the subsequent modification, declared upon as a whole.

4. ————: Parol Modification. A written contract may be modified by a new parol contract subsequently entered into.

5. ————: Parol Evidence: Varying Written Contract. In an action on a written contract, parol evidence of an additional agreement, varying the terms of the written contract, made contemporaneously with it, is not admissible, except where the contract reveals on its face that it is incomplete with respect to the additional term sought to be supplied by the parol evidence.

6. ————: ————: ————. In an action for the discharge of an employee, who was employed to sell oil for defendant under a written contract which required him to sell at the market price, where defendant pleaded justification for the discharge, in that plaintiff had sold oil under the market price, by giving his customers a certain rebate out of his commission, *held* that evidence offered by plaintiff, to the effect that defendant agreed at the time the written contract was executed, and prior thereto, to permit him to give a rebate to his customers out of his commission, was incompetent, for the reason that it was a contradiction of the terms of the written contract.

6. ————: Action for Breach: Pleading: Variance. In an action for the breach of a written contract, a recovery cannot be had for a breach of the written contract as modified by a parol agreement subsequently made.

7. ————: Modification: Consideration. A consideration is required to support a new contract which modifies the terms of an existing contract.

8. MASTER AND SERVANT: Breach of Contract of Employment: Rebating. Under a contract of employment requiring the employee to get the market price for oil sold for the employer and obligating the employer to pay a commission for oil sold, the employer was justified in discharging the employee for giving rebates out of his commission to his customers, as a result of which the oil was sold for less than the market price, where the employer, after having given the employee permission to rebate in this matter, notified him to discontinue the practice, and he refused to do so.

179 App. 4

Appeal from St. Louis City Circuit Court.— *Hon. J. Hugo Grimm*, Judge.

REVERSED AND REMANDED.

*Johnson, Rutledge & Lashly* for appellant.

(1) In an action brought on a special written contract, no verbal contract being pleaded, recovery cannot be had upon a contract, part of which is in writing, and other parts resting in parol. Koons v. Car Co., 203 Mo. 227; Smith v. Shell, 82 Mo. 219; Henning v. Ins. Co., 47 Mo. 425. (2) In a suit upon a written contract, all prior and contemporaneous negotiations, conversations and agreements are merged in the writing. Mills & Elev. Co. v. Adams El. Co., 115 Mo. App. 542; Morgan v. Porter, 103 Mo. 135; McFadden v. Railroad, 92 Mo. 343; Bank v. Cushman, 66 Mo. App. 102; Huber Mfg. Co. v. Hunter, 87 Mo. App. 50; Loan & Trust Co. v. Whitman, 71 Mo. App. 275; Walker v. Engler, 30 Mo. 130; Tracy v. Union Iron Works, 104 Mo. 193; Cole v. Armour, 154 Mo. 350; Boyd v. Paul, 125 Mo. 9; Seitz v. Brewers Co., 141 U. S. 510; Ringer v. Holtsclaw, 112 Mo. 523; Parker v. Vanhoozer, 142 Mo. 627. (3) Executory contracts may be modified by mutual consent, and, that, too, without additional consideration. 35 Cyc. 124; Pottery Co. v. Folekemer, 131 Mo. App. 105; Henning v. Ins. Co., 47 Mo. 431. (4) The refusal of a servant to obey the reasonable orders of his master is good ground for his discharge. 26 Cyc. 992, et seq.; McCann v. Desnoyers, 64 Mo. App. 66; Linder v. Brewery & Ice Co., 131 Mo. App. 68.

*H. Chouteau Dyer* for respondent.

(1) The contract sued upon was properly pleaded. It was signed by one of the parties and accepted and acted upon by the other party. Berner v. Bagnell, 20 Mo. App. 543; Stone v. Pennock, 31 Mo. App. 544; Am.

Pub. & Engr. Co. v. Walker, 87 Mo. App. 503; Sunbury v. Aaron, 136 Mo. App. 222; Brown v. Smith, 113 Mo. App. 59; Burriss & Haynie v. Railroad, 105 Mo. App. 659. (2) Where the parties to a contract have given it a particular construction, such construction will generally be adopted by the court in giving effect to its provisions. The parties to the contract in the case at bar determined for themselves what should be considered as sales made by the plaintiff and this construction being entirely reasonable will be adopted. Krey v. Hussmann, 21 Mo. App. 343; Mathews v. Danahy, 26 Mo. App. 660; Gas Light Co. v. City, 46 Mo. 128; Rose v. Carbonating Co., 60 Mo. App. 28; Belch v. Miller, 32 Mo. App. 387. (3) The statements of witness Pauley were made by him while in the employ of the defendant. They were statements made by an agent acting within the scope of his authority and about the business of his principal and concerning such business. Lumber Co. v. Kreeger, 52 Mo. App. 418. (4) (a) The plaintiff was an agent, not a servant, of the defendant. He was employed to establish contractual relations between his principal and third persons. 31 Cyc. 1192. (b) A servant has been defined as "a person employed by another to render personal services to the employer." In re Grocery Co., 96 Fed. 183. (c) And again as "one who does work under the direction of another who not only precribes to the workman the nature of his work, but directs or at any moment may direct the means also or as it has been put retains the power of controlling the work." Powers v. Hospital, 109 Fed. 294. (d) The general rule that a principal has the right to revoke an agent's authority has its exceptions, like other rules of conduct, and one of the chief exceptions is where the time is definitely fixed for the continuation of the agency. 1 Clark & Skyles Law of Agency, p. 391. (e) The contract in the case at bar was for a fixed period of one year and no right to revoke it was reserved. The

plaintiff is entitled to recover what, if anything, was earned and unpaid prior to the breach and in addition such damages as he may have sustained by reason of the breach.   1 Clark & Skyles' Law of Agency, p. 826, sec. 365; Boland v. Quarry Co., 127 Mo. 520; Hichborn Co. v. Bradley, 117 Iowa, 130.   (5)   The defense attempted to be interposed and insisted upon in defendant's brief is to the effect that another and different contract than the one pleaded was the real contract between the parties; that plaintiff agreed to a modification of the original or written contract and subsequently breached this contract as modified.   Such a modification as claimed by defendant should have been pleaded in its answer.   9 Cyc. 732; Bunce v. Beck, 43 Mo. 266; Henning v. Insurance Co., 47 Mo. 425; Riggins v. Railroad, 73 Mo. 598.   (6)   A modification of the contract, such as claimed by the defendant, needs a valid consideration for its support.   The modification as claimed would amount to a rescission of the original contract and to become available as a defense it should have been pleaded.   Riggins v. Railroad, 73 Mo. 598.

NORTONI, J.—This is a suit for damages accrued through the breach of a contract of employment and as for the wrongful discharge of plaintiff.   Plaintiff recovered and defendant prosecutes the appeal.

Defendant is a corporation engaged in the oil business in St. Louis, and plaintiff is an experienced salesman of that commodity.   Defendant, desiring to install a tank wagon service for the sale of oil, employed plaintiff, who possessed considerable experience in that line, for a period of one year, and entered into a' written contract with him to that effect, on the twenty-seventh day of January, 1911.   By the terms of the contract, plaintiff was to receive a commission on the oil sold through his efforts, and he guaranteed to defendant that he would sell no less than an average of 15,000 gallons per month, the sales to be made at mar-

ket prices of the oil at all times of the year. It appears that plaintiff entered upon the employment immediately, and induced three experienced tank wagon men to quit the employ of other companies and enter that of defendant under his supervision in selling the oil. It seems that by their course of conduct the parties construed the contract of employment as authorizing the employment of the three tank wagon men to sell and deliver the oil under plaintiff's supervision. The case was tried throughout on this theory, and it appears defendant paid a salary to the drivers of the tank wagons, while plaintiff paid to them a portion of his commissions on sales as well. Plaintiff went about and solicited the customers to whom the tank wagon men delivered the oil and thus made the sales contemplated in the contract of employment. Through this method plaintiff sold and delivered more than an average of 15,000 gallons of oil per month during February, March, April and May, but he was discharged by defendant on June second.

The suit proceeds on the theory that plaintiff fully performed the conditions of the contract on his part until his discharge, and that such discharge was wrongful. As a justification of the discharge, defendant insists that plaintiff did not obtain the market price for the oil, in that he instituted a system of rebates whereby he returned to each customer five per cent of his commissions received on sales, and refused, on request, to desist from this practice. The entire controversy between the parties pertains to this matter, and the principal argument for a reversal of the judgment relates to the action of the court in permitting plaintiff to prove by parol, as a part of his contract of employment, that defendant agreed he should do so and to recover thereon as if such were a term of the contract said to be breached by defendant. The contract of employment is in writing, and the petition declares upon that alone, assigning its breach through 'the

wrongful discharge of plaintiff on June second by defendant. The contract declared upon and introduced in evidence, omitting signature, is as follows:

HENSELER MERCANTILE OIL & SUPPLY
COMPANY.

St. Louis, Mo., January 27, 1911.

"We, the undersigned, do hereby agree to pay Mr. Goller the following commission on sales of refined oils and gasoline for the period of one year, to-wit:

40-41 Coal oil 1 3-8c per gal.

43-44 Coal oil 2c per gal.

Stove gasoline 1 5-8c per gal.

All other grades of gasoline and coal oil 50 per cent of the gross profits as per books open to Mr. Goller at any time.

Mr. Goller, on his part, to guarantee us an average sale of not less than 15,000 gallons per month, he to get the market prices for the above goods at all times during the year."

It is obvious that there is no provision contained in this writing by which plaintiff is authorized to induce the sale of defendant's oil through rebating a portion of his commissions to his customers, but, on the contrary, the contract in express terms provides that plaintiff is "to get the market prices for the above goods at all times during the year." Moreover, the petition contains no averment to the effect that this contract was subsequently modified by another agreement authorizing plaintiff to give rebates to his customers. Neither is there an averment in the petition to the effect that a further agreement in parol was made contemporaneously with the writing to that effect. But, as stated, the petition declares upon the written contract above copied only and for its breach through an alleged wrongful discharge of plaintiff.

Notwithstanding the petition declares upon the written contract, the court permitted plaintiff, over the objection and exception of defendant, to introduce

evidence tending to prove that, immediately before and at the time the written contract was entered into, Mr. Nobbe, president of defendant company, agreed plaintiff might rebate his customers, out of his commissions, by way of an inducement to them to purchase defendant's oil. Plaintiff testifies such to be the fact, and he says, too, that about a week after the contract was entered into, he and Mr. Nobbe again talked the matter over and this course was agreed upon. Touching this matter Mr. Nobbe says that, during the next week after the written contract was entered into, plaintiff approached him upon the subject, and he stated that he had no objection to plaintiff's rebating his customers, provided defendant company got the amount due it according to the market price, less plaintiff's commissions, for the oil. However, it is insisted, on the part of defendant, that no new contract was made at the time touching this matter nor a modification of the prior one, but rather a mere permission was given by defendant company to plaintiff to pursue that course, if he chose to do so. It is conceded throughout the case that plaintiff did enter into an agreement with all of his customers to whom the oil was sold, by which he agreed to, and actually did, return to them five per cent of his commissions received on sales to each. The business was thus conducted during the months of February and March and, indeed, throughout April and May, but in April other oil companies complained of the practice as an unfair one. Indeed, Mr. Nobbe testifies that the Waters-Pierce Oil Company and the Bell Oil Company, who had learned of plaintiff's rebating his customers, insisted that the practice must be discontinued, as it operated to impair the selling price. Upon being thus advised of the objections by and on the part of competing companies, Mr. Nobbe says he notified plaintiff that he must "cut out" his rebates to customers and that plaintiff agreed to do so.

Mr. Nobbe explains in his testimony that, though he had given his permission to plaintiff and acquiesced in the matter about a week after the contract of employment was made, he could not tolerate it over the objections of his competitors. He says that both the Waters-Pierce and Bell Company were large concerns, while his company was a small one, and that they would crush him if the practice were continued by plaintiff. According to the evidence for defendant, plaintiff agreed to quit rebating but did not do so. It appears, without contradiction, that plaintiff continued the practice throughout the month of May, after having been notified by defendant not to do so, and told Mr. Nobbe on June second that he could not quit it as his customers insisted upon having rebates. Upon being thus informed by plaintiff that he would not quit giving the five per cent rebate to his customers, on June second, Mr. Nobbe summarily discharged him as if plaintiff had breached his contract of employment.

The contract by which plaintiff was employed as a salesman for defendant is in writing and there is nothing upon its face suggesting it to be incomplete in itself or that it does not purport to be a complete expression of the entire contract. Indeed, it is declared upon in the petition as the contract between the parties, and it is certain that it is such, for all prior conversations and negotiations with respect to the same subject-matter are, in the absence of fraud, accident or mistake, of which there is no suggestion here, regarded in the law as merged in the writing. [Morgan v. Porter, 103 Mo. 135, 15 S. W. 289; Flanagan Mills Co. v. Adams Grain Co., 115 Mo. App. 542, 90 S. W. 1035.] This contract in express terms imposes upon plaintiff the duty to obtain the market prices from his customers for the oil sold by him. The last clause of the writing imposes the obligation that "he (plaintiff) to get the market prices for the above goods at all times during the year." Of course, if he sold the goods to

his customers at the market price and collected the full amount therefor but under an agreement that he would refund to them five per cent of his commission, this obligation was breached, for though he obtained the full measure of compensation to which defendant was entitled, less commissions, he nevertheless indirectly made the sale to his customers for less than the market price. It is obvious that this provision of the contract referred to the market price at which plaintiff was to sell the oil to his customers and not to the price at which defendant was to furnish the oil to him for sale to them. This being true, there can be no doubt that defendant was justified in discharging plaintiff from its service for breaching this stipulation of the contract, unless it be the right to do so was vouchsafed in a modification of the contract, made subsequent to its execution.

It is, of course, true that parties may modify an existing contract after it is executed by adding new terms or varying prior terms imposed thereby. But in such cases, the recovery is to be had upon the original contract and the subsequent modification declared upon as a whole, for it is the breach of the entire contract thus modified which gives rise to the cause of action. [See Lanitz v. King, 93 Mo. 513, 518, 519, 6 S. W. 263; Henning v. U. S. Ins. Co., 47 Mo. 425.] While it is no doubt true that a contract expressed in writing may be subsequently modified by the parties through entering into a new one, which lies in parol alone, it is certain that one may not recover as for the breach of a contract expressed in writing, by showing an additional agreement thereto varying its terms, made contemporaneously with the execution of the written contract, by parol, except it be in those cases where the writing reveals on its face that it is incomplete with respect to the additional term sought to be supplied in parol. [See Koons v. St. Louis car Co., 203 Mo. 227, 255, 101 S. W. 49; Henning v. U. S. Ins.

Co., 47 Mo. 425.] There is nothing in the written contract sued upon suggesting it to be incomplete with respect to the price at which plaintiff was to sell the oil, for it expressly requires him to obtain the market price. It is therefore obvious that the court erred in permitting him to give evidence to the effect that, at the time the contract was made and immediately prior thereto, in the conversation pertaining to the subject-matter, defendant agreed plaintiff might sell the oil for less than the market price through the medium of an arrangement whereby he should rebate five per cent of his commissions to the customers.

Moreover, the court erred, too, in submitting this matter to the jury as a predicate of liability as for a breach of a term of the contract, first, because it was not declared upon in the petition, and, second, for the more obvious fundamental reason that it authorized a recovery as for the breach of a parol contract made contemporaneously with a written contract between the same parties touching the same subject-matter which contradicted and varied the terms of the writing.

So much of plaintiff's instruction as is pertinent to this matter will be copied here. The instruction is extended, and, for the purpose of brevity, other portions will be omitted. Concerning the matter in judgment, the instruction reads:

"The court further instructs the jury that if you find and believe from the evidence that the plaintiff and defendant entered into the contract read in evidence, that *at the time they entered into the contract it was understood and agreed between them* that plaintiff should, in order to secure and hold customers, be permitted to pay to those purchasing oil through him a rebate or discount out of his commissions equal to five per cent of the amount of their purchases, etc., etc." the finding should be for the plaintiff, provided the jury further found defendant received the market price

for the oil, and the discharge of plaintiff. (Italics are
our own.)

This instruction is, of course, erroneous for that,
as before said, it submits a predicate of liability as for
a breach of a verbal contract not set forth in the peti-
tion in any way, and further because it authorizes a
recovery for the breach of a verbal contract revealed in
the evidence to have been made contemporaneously
with the writing and contradictory thereof. The in-
struction seems to assume, too, that the words of the
contract requiring plaintiff to get the market price for
the oil at all times during the year to have been fully
complied with if he received less than the market price
therefor but caused defendant to be paid the amount
due it after his commissions were deducted. Obvi-
ously, such was not the intention of the parties as re-
vealed on the face of the contract, for it says nothing
about the price defendant was to receive, but on the con-
trary expressly requires that he, the plaintiff, get the
market prices for the oil, and, of course, thereafter de-
fendant would compensate him by way of commission
thereon.

The court refused to instruct, at the request of
defendant, that the giving of rebates, after they were
forbidden by defendant's president, justified the dis-
charge, in that it operated a breach of the stipulation
requiring plaintiff to obtain the market price for the
goods, and instructed of its own motion on this ques-
tion as follows:

"The jury are instructed that if you find and be-
lieve that defendant employed the plaintiff as a sales-
man, but that it was not agreed between them at the
time of the employment of the plaintiff that the plain-
tiff should be permitted to pay customers a rebate or
discount of five per cent on the amount of their pur-
chases out of his commissions, then defendant had the
right to refuse to permit plaintiff to make such rebates
even out of his own commissions, and in that case if you

find that defendant instructed plaintiff not to allow rebates or discounts to customers and plaintiff nevertheless continued to do so and refused to discontinue the practice, then defendant had the right to discharge him, and your verdict must be for the defendant.''

This instruction is erroneous, too, in that it assumes as a matter of law that an agreement touching the subject of the five per cent commission made contemporaneously with the written contract was valid and enforceable though it varied and contradicted the terms of such writing.

There can be no doubt that, if the parties actually made a new contract covering this matter after the written contract was made and thereby modified the terms of the contract theretofore expressed in writing, such modified contract should prevail. However, that matter, it seems, was not relied upon in the case, though there is some evidence tending to prove it. But the consideration for a new undertaking is not developed, and, of course, such is required. [Henning v. U. S. Ins. Co., 47 Mo. 425; Bunce v. Beck, 43 Mo. 266.] If the case is retried and the petition amended, more may be made to appear. On the other hand, if it appears that defendant merely granted permission to plaintiff to give rebates from his commissions and thereafter revoked the license and directed him to discontinue the practice, which he declined to do, it was, of course, justified in the discharge, for in such circumstances it appears plaintiff breached the contract by continuing the practice from and after notification on the part of his employer to quit it.

The judgment should be reversed and the cause remanded, but with leave to plaintiff to amend, if he be so advised. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.