MARSHALL HALL GRAIN COMPANY, Appellant, P. H. BOYCE MERCANTILE COMPANY, Respondent.

Springfield Court of Appeals, May 9, 1919.

1. **FRAUDS, STATUTE OF:** Contract by Correspondence. Where contract for purchase of corn, forwarded by buyer to seller for signature on October 23d, because it erroneously provided for shipment by November 3d, was returned by seller with letter requesting change to show *shipment by November 5th* and return of the papers for seller's signature, and on October 25th the buyer returned the contract with such change made, the contract was complete under the Statute of Frauds; the seller's letter referring to the contract which contained all the material elements of a sale contract in that it designated the amount, price, etc., and seller's letter fixing the date or delivery.

2. ———: Memorandum of Sale: Showing All Terms. To constitute a contract sufficient under the Statute of Frauds, a memorandum of the sale of the merchandise must contain all the material terms and conditions of the contract made and signed by the party sought to be charged.

3. ———: Letter Referring to Memorandum. A letter or telegram signed by a party sought to be charged, which either sets forth the terms agreed upon or refers to a memorandum which sets it forth, is sufficient to satisfy the statute.

4. **EVIDENCE:** Parol Evidence: Sale Contract: Conditions. Where a contract for sale of corn purported to cover every essential of the

contract, it could not be varied by parol evidence that it was part of the agreement that the corn would be delivered as contracted provided the seller was able to procure cars in which to ship it.

5 ——: ——: Incompleteness of Contract. Oral testimony to show the real agreement of the parties is never admitted, in case of a written contract, except where the writing shows on its face that it is incomplete and does not purport to be a complete expression of the entire contract.

6. CONTRACTS: Mistake: Failure to Read Contract. One who signs a contract is presumed to know and understand its terms, and a mere failure to read or inform himself of the terms, in the absence of fraud, is no defense.

Appeal from Scott Circuit Court.—*Hon. Frank Kelly,* Judge.

REVERSED AND REMANDED.

*Dudley &Lucas* and *Martin T. Farrow* for appellant.

*Mozley & Blanton* for respondent.

FARRINGTON, J.—The appellant, plaintiff below, appealed from an adverse judgment rendered against it, allegeing that the trial court erred in permitting it, alleging that the trial court erred in permitting the defendant to introduce oral testimony which had been entered into by the parties.

The facts of the case, as shown by the record, are as follows: The plaintiff is a corporation engaged in the grain business in the city of St. Louis; the defendant is a corporation engaged in the 'grain business in the town of Morley, Scott County, Missouri. On October 23, 1917, a represéntative of the plaintiff entered into negotiation with the representives of the defendant for the purchase of five (5) cars of corn, to be delivered f. o. b. cars at Morley, and to be shipped at the convenience of the seller between the 23th of October, 1917, and the 5th of November, following. It was understood between the parties that the agent of the plaintiff could not close a sale, but that any negotiation

or proposition that he and the defendant might agree on must be confirmed by the plaintiff in its St. Louis office by its proper officer. There is no dispute as to the price which was to be paid for the corn. The agent of the plaintiff telephoned to plaintiff's St. Louis office the terms of the sale, which he testifies were to be for a certain price, and there was to. be five car-loads of the corn delivered f. o. b. cars at Morley on or before November 5th, 1917. The St. Louis office confirmed the sale as reported to it, and on the same date forwarded to the defendant a cash grain contract for the purchase and sale of this corn, setting forth that on the 23rd day of October, 1917, it had purchased five cars of corn, describing the character of corn and giving the price to be paid, fixing the delivery at f. o. b. cars at Morley, and to be shipped at the convenience of the seller between October 23, 1917, and November 3, 1917. This contract contains many other provisions, which are unnecessary to set out for a full disposition of the point raised here. It was signed by the plaintiff, and a blank line was left over which was written the word "Accepted," and under which line was written the word "seller." This line was intended to be signed by the defendant. Accompanying the contract was a letter written by the plaintiff, dated October 23, 1917, which letter was as follows:

(Address and signature of letter omitted.)

"St. Louis, 10/23/17.

Gentlemen:

We enclose confirmation covering five cars of corn bought from you this morning by our Mr. Niergarth for shipment by November 5th.

We trust you will find this contract correct and in regular order and will appreciate your signing the duplicate and returning to us for our files.

Please ship this corn out to us as quickly as possible. If you are in position to make us any offers please let us hear form you."

On receipt of this letter, the defendant on its letterhead, relied:

"Morley, Mo., Oct. 24th, 1917.

Marshall Hall Grain Co.,

St. Louis, Mo.

Gentlemen: We are returning to you the corn papers. Will say that this corn was sold to be shipped on or before Nov. 5th. We notice you have the papers made from 10/23 to 11-3. Please change this to read from 10-23 to 11-5 as per our contract and return the papers to us for our signature."

(Signature Omitted).

On October 25th, the plaintiff mailed the following letter to the defendant:

"P. D. Boyce Mercantile Co.,

Morley, Mo.

Gentlemen:

We return herewith our contract covering the five thousand corn, and have corrected it to November 5th, but in writing us (up) the confirmation we confused the time of shipment with another purchase.

Trust you will find the contract in regular order now, and will appreciate if you will sign the duplicate and return to us."

(Signature Omitted).

The defendant failed to deliver the corn to the plaintiff, and the plaintiff was required to go on the market and procure corn at a loss to it, the price of corn having advanced between October 23rd, and November 5th. As to the above facts there is no serious dispute between the parties.

The defendant filed a general denial and set up as a defense that the contract was one which was required to be signed under the Statutes of Frauds in this State governing the sale of merchandise, and relies upon the defense that it, the defendant, the party sought to be charged, never signed any contract or memorandum of contract such as to satisfy the Statute of Frauds.

The defendant offered the witnesses who transacted the business with plaintiff's agent, who, over the objection and exception of plaintiff, were permitted to testify that it was a part of the agreement with plaintiff's agent that this corn would be sold and delivered as contended for by the plaintiff on or before November 5th, provided the defendant was able to procure cars from the railroad company in which to ship the corn. This provision is testified to by the witness of defendant as being a part of the agreement for the sale of the corn. The contract of sale, heretofore referred to, which was forwarded by the plaintiff on October 23rd, for defendant's acceptance and signature, contained no such provision but fixed the final delivery date at November 5th without and provision as to defendant's ability 'or inability to procure cars.

There are, therefore, two questions which arise in this case. First, did the correspondence carried on between the parties, and especially that part of the correspondence which was signed by the defendant, satisfy the Statute of Frauds as to the making of a contract of sale and a signing by the defendant, the party sought to be charged; and second, if there was such a contract made, can the defendant alter or change the contract by parol evidence?

We are convinced that the trial court erred in permitting this testimony, which was objected to because the evidence shows that a binding contract was entered into between the parties and signed by the defendant. The letter written by the plaintiff sending down the cash grain contract, dated October 23rd, informed the defendant that the sale of the five cars of corn negotiated by Niergarth, plaintiff's agent, was confirmed for shipment by November 5th. The contract, however, which was sent fixed the final delivery date at November 3rd, which all parties concede was not the final delivery date, but on the other hand all concede that November 5th was the final delivery date. The defendant, on receiving this letter immediately an-

swered returning the cash contract which provided that the last final delivery date would be on November 3rd, informing the plaintiff that this corn was sold to be shipped on November 5th, in which letter it is stated: "We notice you have the papers made from 10-23 to 11-3," and instructing plaintiff as follows: "Please change to read from 10-23 to 11-5, as per contract, and return the papers to us for our signature." This letter was signed by the defendant, and on the 25th of October the plaintiff acknowledged receipt of this letter, acknowledged the mistake on its part in inserting in the contract November 3rd insted of November 5th, changed the contract to read as the defendant had instructed it and returned the contract as per instructions for signature.

To constitute a contract sufficient under the Statute of Fraude, it is enough that a memorandum of the sale of the merchandise must contain all the material terms and conditions of he contract made and signed by the party sought to be charged. [Arky v. Commission Co., 185 Mo. App. 241, 170 S. W. 353.] And a letter or a telegram signed by a party sought to be charged which either sets forth the terms agreed upon or refers to a memoradum which does set it forth, is sufficient to satisfy the statute. [Donovan v. Brewing Co., 92 Mo. App. 341; Smith of law of Fraud, section 381.]

Taking the transactions as they appear from the record before us, whatever may have transpired between the parties prior to defendant's letter of October 24, 1917, on that date the defendant did sign a letter which referred to a memorandum in its possession which memorandum contained all of the material elements of a contract for the sale of corn, in that it desiginated the amount of corn bought and sold, the price to be paid, and the letter of the 24th written by the defendant fixed the date of delivery. This letter can logically mean but one thing according to its plain language and terms. It acknowledged in writing to the defendant that we have sold you a certain amount of

corn, at a fixed price, at a fixed place of delivery, as embodied in a paper which you have sent us, to be delivered on November 5, 1917. The plaintiff immediately, in its letter of the 25th, acknowledged the error in wrting in the 3rd instead of the 5th of November in the contract, and confirmed the defendant's statement that the contract actually made was that the final delivery date was November 5th.

There is no difference in principle in this case than in the case of Donovan v. Brewing Company, 92 Mo. App. 341, where a contract for the sale of land was sent by a purchaser to the seller, stating certain terms of sale. The defendant in that case wrote a letter to the plaintiff stating what the terms of prior negotiations were and setting them out in the letter and signed it. The terms of this letter were accepted by the plaintiff in that case and it was held that the writing was sufficient to hold the defendant for the sale of the land under the statute.

The letter of the defendant in the case at bar by its very terms adopted the terms of the contract of sale as set forth in plaintiff's contract forwarded on the 23rd, as if defendant had copied such contract in its letter written to the plaintiff on the 24th. It, therefore, in such letter acknowledged in writing, and signed the same, that it had sold to the plaintiff a certain amount of corn, at a certain price, and to be delivered at a certain place and time. This is all that is necessary under such transactions to comply with the Statute of Frauds, dealing with this subject. [See Peycke Bros. v. Ahrens, 98 Mo. App. 456, 72 S. W. 151; Union Service Co. v. Moffett-West Drug Co., 148 Mo. App. 327, 128 S. W. 7; 6 Ruling Case Law, sec. 56, page 640.]

The contract thus made was a complete contract, and purports to cover every essential element or term of a sale. Its writing admitted of no ambiguity, nor is there any evidence on the face of the writings of any term which was actually agreed upon as having been omitted in writing. Parol evidence is inadmissible to piece out the contract or to modify it, or to subtract

from the essential elements in the writing.   To permit oral evidence which would vary or contradict the terms of the written contract would be to defeat the very purpose of the statute.   [Standard Fireproofing Co. v. St. Louis Fireproofing Co., 177 Mo. 559, l. c. 571, 76 S. W. 1008; Reigart v. Coal Co., 217 Mo. 142, 177 S. W. 61; Tips v. Gay, 146 S. E. 306, l. c. 311; Boulware v. Mfg. Co., 152 Mo. App. 567, 134 S. W. 7; Leasley Bros. v. Fruit Co., 162 Mo. App. 195, 144 S. W. 138.]

Were this a contract not required by the Statute of Frauds to be in writing, there would be no room for the introduction of oral testimony, because such testimony is never admitted except in cases where the writing shows on its face that it is incomplete and does not purport to be a complete expression of the entire contract.   [Koons v. St. Louis Car. Co., 203 Mo. 227, 101 S. W. l. c. 57.]

Reed on the Statute of Frauds, Vol. 1, sec. 323, l. c., 513, is as follows:   "The Supreme Court of Maine, in a recent case, expresses itself on this subject with no uncertainty; the court said:   "When a memorandum is made, etc., as, etc., a complete memorandum of the essential terms of a contract, and it is capable of a clear and intelligible exposition . . . parol evidence is incompetent to contradict or vary its terms; and if, in fact, some of the conditions actually made be omitted from it, the party defendant cannot avail himself of them . . . Such is the general rule governing written contracts, and the Statute of Frauds leaves it, together with its exceptions, as it found them.''

The defendant's witnesses testified that they did not read the contract of sale which was sent to defendant by the plaintiff in the letter of October 23d, other than to see that the final delivery date was wrong, and that there was only an hour or so within which time they could answer this letter on that date so as to get a letter off to the plaintiff on that day's mail, and that the omission of the condition which they

swear was a part of the original agreement was not noticed by them when they returned the contract to plaintiff in the letter of the 24th. There is no contention but what such omission could have readily been discovered if the contract had been read, and there is no reason given for a failure to read the terms of the agreement they were assenting to and making, other than the fact that they wished to expedite the closing of the deal. There is no charge of the mistake being procured by any fraudulent design, concealment or manipulation by the plaintiff. The law is well settled in this State that one who signs a contract is presumed to know and understand its terms, and a mere failure to read or inform himself of the terms in the absence of fraud, is no defense. [Deming Investment Co. v. Wasson, 192 S. W. 764.]

We, therefore, must hold that the defendant here bound himself to a contract in writing sufficient to meet the requirements of the Statute of Frauds, the terms of which are set forth in the contract forwarded to the defendant on October 23, 1917, with the exception of the delivery date, which was fixed in defendant's letter of the 24th, which corrected delivery date was accepted by plaintiff in its letter of the 25th of October, 1917; and further hold that the contract as embraced within the letters and papers passing between the parties constituted and purported to constitute the complete agreement between the parties without ambiguilty or evidence of any terms having been omitted. And that oral testimony tending to vary or contradict the terms of such writing is inadmissible, and that the court erred in permitting the introduction of the testimony objected to.

The judgment will, therefore, be reversed and the cause remanded. *Sturgis, P. J.,* and *Bradley, J.,* concur.